## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| PROGRESSIVE PREFERRED INSURANCE COMPANY, | Case No. 20-CV-958 (NEB/LIB) |
| Plaintiff, | ORDER ON MOTION FOR SUMMARY DECLARATORY JUDGMENT |
| v. | |
| DENNIS MCNEIL, | |
| Defendant. | |

Plaintiff Progressive Preferred Insurance Company ("Progressive") brought this declaratory judgment action to resolve the issue of whether a motorcycle insurance policy it issued to Defendant Dennis Archie McNeil provides underinsured motorist ("UIM") coverage for injuries McNeil sustained in a collision while riding his motorcycle. Progressive moves for summary judgment, seeking a declaration that Progressive has no obligation under the policy to provide UIM benefits to McNeil for such injuries. (ECF No. 10.) For the reasons below, the Court grants the motion.

### BACKGROUND

The parties have stipulated to the following facts:

McNeil, a Minnesota resident, owned a Honda motorcycle that he insured under a policy Progressive issued with effective dates of June 20, 2018, to June 20, 2019. (ECF

No. 9 ("Stip.") ¶¶ 1–3; ECF No. 1-2 ("Policy")[1].) The Policy included UIM coverage for covered claims with limits of $100,000 for each person and $300,000 for each accident, subject to applicable terms, conditions, definitions, limitations and exclusions. (Stip. ¶ 4; Policy at 2.) McNeil also owned a Chevrolet Equinox sport utility vehicle (the "SUV") insured by Grinnell Select Insurance Company ("Grinnell"). (Stip. ¶ 5.)

On June 7, 2019, McNeil was riding his motorcycle, and Sharee Lee Teachout was operating McNeil's SUV as a permissive driver, on the same public street in Kanabec County, Minnesota. (*Id.* ¶¶ 7, 8.) The SUV struck the motorcycle, causing significant injury to McNeil. (*Id.* ¶¶ 9, 10.) At the time of the accident, Teachout owned a 1999 Buick Century Limited (the "Buick") insured by Auto-Owners Insurance Company ("Auto-Owners"). (*Id.* ¶ 12.) The Buick was not involved in the collision. (*Id.*)

After the collision, Grinnell and Auto-Owners tendered their policy limits to McNeil. (*Id.* ¶¶ 11, 13.) McNeil notified Progressive of these proposed liability settlements and an opportunity to substitute its drafts pursuant to *Schmidt v. Clothier*, 338 N.W.2d 256 (Minn. 1983).[2] (*Id.* ¶ 14.) Progressive declined to substitute its drafts and McNeil accepted

---

[1] Citations to pages of the Policy at ECF No. 1-2 refer to ECF page numbers.

[2] "Under *Schmidt*, after the injured party and tortfeasor settle, a UIM carrier can protect its subrogation interests by 'substitut[ing] its payment to the insured in an amount equal to the tentative settlement' and then, as subrogee, maintain the insured's tort action against the tortfeasor." *Strong v. Lange*, No. A13-1886, 2014 WL 1517415, at *2 (Minn. Ct. App. Apr. 21, 2014) (quoting *Schmidt*, 338 N.W.2d at 263). "[W]hen a UIM insurer fails to substitute its draft after the plaintiff provides *Schmidt–Clothier* notice and settles, the

the liability settlement offers from Grinnell and Auto-Owners. (*Id.* ¶ 15.) Because McNeil's damages exceed the limits of coverage from Grinnell and Auto-Owners, the parties agree that Teachout is an underinsured motorist. (*Id.* ¶ 16.)

> Progressive's Policy provides UIM coverage, subject to certain conditions:
>
> If you pay the premium for this coverage, we will pay for damages that an insured person is legally entitled to recover from the owner or operator of an underinsured motor vehicle because of bodily injury:
>     1. sustained by an insured person;
>     2. caused by an accident; and
>     3. arising out of the ownership, maintenance, or use of an underinsured motor vehicle.

(Policy at 17 (emphasis removed).) The Policy defines an "underinsured motor vehicle" as "a land motor vehicle or trailer of any type to which a bodily injury liability bond or policy applies at the time of the accident, but its limit of liability for bodily injury is less than the damages that an insured person is entitled to recover from the owner or operator of the motor vehicle because of bodily injury." (*Id.* at 18.) The Policy specifically excludes from the definition of underinsured motor vehicle "any vehicle or equipment . . . owned by you or a relative." (*Id.*) In relevant part, "you" is defined as "a person shown as a named insured on the declarations page." (*Id.* at 9.) The parties do not dispute that McNeil is the named insured. (*Id.* at 1).

---

tortfeasors are released from any further liability." *White v. Am. Family Ins. Co.*, No. A16-1149, 2017 WL 1157889, at *3 (Minn. Ct. App. Mar. 27, 2017).

McNeil filed an action against Progressive in Minnesota state court seeking UIM benefits under the Policy. (ECF No. 1-1.) The parties agreed to stay that action to allow Progressive to seek a declaration of rights and responsibilities before this Court. (ECF No. 12 at 5.) Progressive now moves for summary declaratory judgment declaring that it has no obligation under the Policy to provide UIM benefits to McNeil.

## ANALYSIS

### I. Legal Standard

Under Rule 56 of the Federal Rules of Civil Procedure, "the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The parties have raised no genuine issues of material fact; the issue before the Court is purely a legal one.

The interpretation of an insurance policy is a question of state law. *Stan Koch & Sons Trucking, Inc. v. Great W. Cas. Co.*, 517 F.3d 1032, 1039 (8th Cir. 2008). Minnesota law applies here, as Minnesota is the forum state and neither party raises a choice-of-law claim. *Progressive N. Ins. Co. v. McDonough*, 608 F.3d 388, 390 (8th Cir. 2010) (applying Minnesota law to an insurance policy-related declaratory judgment action). The Court interprets an insurance policy consistent with general principles of contract construction

under Minnesota law, giving effect to the intent of the parties.[3] *Jerry's Enters., Inc. v. U.S. Specialty Ins. Co.*, 845 F.3d 883, 887 (8th Cir. 2017) (citing *Thommes v. Milwaukee Ins. Co.*, 641 N.W.2d 877, 879 (Minn. 2002)). An insurance policy "must be construed as a whole, and unambiguous language must be given its plain and ordinary meaning." *Midwest Family Mut. Ins. Co. v. Wolters*, 831 N.W.2d 628, 636 (Minn. 2013) (quotation omitted). Policy language is ambiguous if it is "susceptible to two or more reasonable interpretations," and the Court resolves any ambiguity in favor of the insured. *Id.* (quotation and citation omitted). The Court should interpret each word in the policy to have meaning, rather than to be superfluous. *Econ. Premier Assurance Co. v. W. Nat'l Mut. Ins. Co.*, 839 N.W.2d 749, 756 (Minn. Ct. App. 2013). The insured bears the initial burden of establishing that coverage exists, and the insurer then carries the burden of demonstrating whether a policy exclusion applies. *Travelers Indem. Co. v. Bloomington Steel & Supply Co.*, 718 N.W.2d 888, 894 (Minn. 2006).

## II.     "Underinsured Motor Vehicle"

McNeil was injured when his own SUV, driven by Teachout, collided with his motorcycle, which he was driving. Progressive maintains that, because the Policy specifically excludes any vehicle owned by the named insured from the definition of "underinsured motor vehicle," McNeil's SUV was not an underinsured motor vehicle

---

[3] The parties agree that the Minnesota No-Fault Automobile Insurance Act, Minn. Stat. §§ 65B.41–65B.71, does not govern the Policy. (ECF No. 12 at 9–13; ECF No. 14 at 1, 4–5.)

and the Policy does not provide UIM coverage. (ECF No. 12 at 2, 7–9; Policy at 9, 18.) McNeil does not dispute that his SUV is not an underinsured motor vehicle under the Policy. (ECF No. 14 at 6.) Based on the plain language of the Policy, the Court finds that because McNeil owned the SUV, the SUV was not an underinsured motor vehicle under the Policy. Thus, the Policy excludes UIM coverage based on the SUV.

Indeed, McNeil's argument has nothing to do with the SUV involved in the collision. Instead, he argues that under the "ambiguous" terms of the Policy, UIM coverage applies because Teachout was an underinsured motorist and her Buick was underinsured.[4] (ECF No. 14 at 4–7; *see also id.* at 9 (arguing that the UIM coverage exclusion does not apply to the Buick because McNeil had no ownership interest in it).)

The Policy defines an "underinsured motor vehicle" as "a land motor vehicle or trailer of any type to which a bodily injury liability bond or policy applies at the time of the accident, but its limit of liability for bodily injury is less than the damages that an insured person is entitled to recover from the owner or operator of the motor vehicle because of bodily injury." (Policy at 18.) The parties agree that the Buick satisfies this definition because it is a motor vehicle to which a bodily injury policy applied at the time of the accident (*i.e.,* the Auto-Owner's policy), but the liability limit was less than the

---

[4] Although McNeil initially asserts that the term "underinsured motor vehicle" is ambiguous, he soon thereafter maintains that it is "clear and unambiguous." (ECF No. 14 at 5, 6). He points to no ambiguous language in the definition of underinsured motor vehicle, and the Court finds none. Instead, McNeil's argument for "ambiguity" is that the parties differ on the application of unambiguous language to the stipulated facts.

6

damages McNeil was entitled to recover from Teachout. (ECF No. 14 at 6; ECF No. 15 at 3.) The Court agrees as well; the term uninsured motor vehicle is unambiguous, and the Buick is an underinsured motor vehicle under the Policy.

The problem, then, is that UIM coverage does not apply because McNeil's bodily injury did not arise out of Teachout's use of the Buick. (ECF No. 15 at 3.) McNeil contends that the Policy is ambiguous because it does not address the involvement of the underinsured motor vehicle required for UIM coverage. (ECF No. 14 at 7–8.)

Even if McNeil's argument made logical sense, the clear language of the Policy belies it. Under the Policy, Progressive "will pay for damages that an insured person is legally entitled to recover from the owner or operator of an underinsured motor vehicle because of *bodily injury . . . arising out of the ownership*, maintenance, or use *of an underinsured motor vehicle*."[5] (Policy at 17 (emphasis added).) According to McNeil, because the Policy does not state that the underinsured motor vehicle has to be involved in the collision giving rise to the claim, it creates an ambiguity that the Court must resolve in his favor. (ECF No. 14 at 7–8.) He cites no caselaw interpreting the phrase "arising out of" to support his position.

The Minnesota Supreme Court has held that the phrase "arising out of" is to be "broadly construed," and generally means "originating from," "growing out of," or

---

[5] The parties do not dispute that the two other requirements of this provision—that the bodily injury was "sustained by an insured person" and "caused by an accident"—are satisfied here. (Policy at 17.)

7

"flowing from." *Dougherty v. State Farm Mut. Ins. Co.*, 699 N.W.2d 741, 744 (Minn. 2005) (quotation marks and citations omitted). It has explained that it typically interprets the phrase "arising out of" in an insurance policy to mean "causally connected with." *Meadowbrook, Inc. v. Tower Ins. Co.*, 559 N.W.2d 411, 419 (Minn. 1997) (citation and quotation marks omitted); *see Bethel v. Darwin Select Ins. Co.*, 735 F.3d 1035, 1039 (8th Cir. 2013) (explaining that a cause-and-result relationship satisfies the "arising out of" provision of a policy) (citing *Progressive Cas. Ins. Co. v. Brockway*, 411 N.W.2d 13, 16 (Minn. Ct. App. 1987)). The Court finds that the Policy's UIM coverage provision is clear and unambiguous. *See generally League of Minn. Cities Ins. Tr. v. City of Coon Rapids*, 446 N.W.2d 419, 422 (Minn. Ct. App. 1989) (noting the Minnesota Supreme Court's definition of "arising out of" was included in the policy "as a matter of law," and holding that the policy provision at issue was clear and unambiguous).

Applying the UIM coverage provision to the record before the Court, there is no evidence that McNeil's bodily injury originated from, grew out of, flowed from, or was otherwise causally connected with the Buick. It is undisputed that the Buick was not involved in the collision that caused McNeil's injury. (Stip. ¶ 12.) Because McNeil's bodily injury did not arise out of Teachout's ownership of the Buick, the Policy does not provide UIM coverage based on the Buick.

## CONCLUSION

Based on the foregoing and on all the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT Progressive Preferred Insurance Company's Motion for Summary Declaratory Judgment (ECF No. 10) is GRANTED.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: February 26, 2021              BY THE COURT:

                                                    s/Nancy E. Brasel
                                                    Nancy E. Brasel
                                                    United States District Judge